# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RAUL HARO,** | ) NO. EDCV 16-0527-KS |
| **Plaintiff,** | ) |
| **v.** | ) **MEMORANDUM OPINION AND ORDER** |
| | ) |
| **NANCY A. BERRYHILL, Acting** | ) |
| **Commissioner of Social Security[1]** | ) |
| **Defendant.** | ) |

## INTRODUCTION

Plaintiff Raul Martinez Haro ("Plaintiff") filed a Complaint on March 23, 2016, seeking review of the denial of his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). (Dkt. No. 1). On April 5 and 19, 2016, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 10, 12.) On August 4, 2016, Defendant filed an Answer

---

[1] The Court notes that Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration on January 23, 2017. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be amended to substitute Nancy A. Berryhill for Carolyn W. Colvin as the defendant in this action.

1   to the Complaint (Dkt. No. 16) and a Certified Administrative Record ("A.R.") (Dkt. No.

2   17).   On November 3, 2016, the parties filed a Joint Stipulation ("Joint Stip.").   (Dkt. No.

3   19.)  Plaintiff asks that the ALJ's decision be reversed for immediate payment of benefits or,

4   alternatively remanded for further proceedings. (Joint Stip. at 10.)  Defendant asks that the

5   ALJ's decision be affirmed. (Joint Stip. at 16.)   The Court has taken the matter under

6   submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

10          Plaintiff filed applications for both SSI and DIB on June 7, 2012, [2] alleging disability

11   beginning on April 28, 2011.  (A.R.170-73 (DIB); 174-84 (SSI).)  Plaintiff was 48 years old

12   on the alleged disability onset date and, thus, defined as "an individual closely approaching

13   advanced age" under Social Security agency guidelines.[3] (A.R. 23; *see* 20 CFR §§ 404.1563,

14   416.963.)  Plaintiff's applications were initially denied on November 15, 2012 (A.R. 58-66)

15   and on reconsideration on June 26, 2013 (A.R. 69-82).   Plaintiff filed a written request for

16   hearing on October 11, 2013.   (A.R.116-17.)   Plaintiff was represented by counsel and

17   testified, with the assistance of a Spanish interpreter, before Administrative Law Judge Paul

18   Coulter (the "ALJ") on October 3, 2014.   (A.R. 31-48.)   Sandra Fioretti, an impartial

19   vocational expert ("VE"), also testified at the hearing.  (A.R. 44-47.)  On November 13,

20   2014, the ALJ denied Plaintiff's claim, concluding that Plaintiff had not been under a

21   disability within the meaning of the Social Security Act from April 28, 2011 through the

22   date of the ALJ's decision.  (A.R. 24.)  Plaintiff requested review of the ALJ's decision by

23   the Social Security Appeals Council (A.R. 7), which denied review on March 11, 2016 (A.R.

24   1-6).  Plaintiff then timely commenced this civil action.

---

[2]          The SSI and DIB applications included in the A.R. are dated June 7, 2012, however, ALJ's adverse decision indicates that Plaintiff' protectively filed for SSI and DBI on May 29, 2012. (*See* A.R. 14, 24.)

[3]          Plaintiff's date of birth is August 27, 1963.  (A.R. 170.)

## SUMMARY OF ADMINISTRATIVE DECISION

Applying the five step sequential evaluation process outlined in 20 C.F.R § 416.920(a), at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 28, 2011, the alleged onset date.  (A.R. 16.)

At step two, the ALJ determined Plaintiff has the following severe impairments: "sleep apnea; diabetes mellitus; obesity; hypertension; hyperlipidemia; bilateral shoulder impairment, causing pain; mild degenerative disc disease, lumbar spine; mild degenerative disc disease, cervical spine; bilateral knee impairment, causing pain; insomnia; mood disorder; cognitive disorder; and anxiety disorder."  (A.R. 16.)

In step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.  (A.R. 17.)  The ALJ then determined that Plaintiff has the residual functional capacity ("RFC") to perform a range of medium work.

Specifically, [Plaintiff] can lift, carry, push, or pull 50 pounds occasionally and 25 pounds frequently; stand/walk for about six hours out of an eight-hour workday; sit for about six hours out of an eight-hour workday; and frequently reach overhead with the bilateral upper extremities.  [Plaintiff] is precluded from even moderate exposure to hazards, such as machinery and heights. Additionally, [Plaintiff] is limited to understanding, remembering, and carrying out simple job instructions, but would be unable to perform work that would require directing others, abstract thought, or planning.  [Plaintiff] can maintain attention and concentration to perform simple routine, and repetitive tasks in a

work environment free of fast-paced production requirements; and have occasional interaction with the public.

(A.R. 18.)

Based on the record evidence and the VE's testimony, the ALJ found that Plaintiff has past relevant work as an industrial truck operator and a construction worker.  (A.R. 23.) After comparing the RFC to the physical and mental demands of Plaintiff's past relevant work, the ALJ concluded that Plaintiff is unable to perform any past relevant work. (*Id.*)

At step four, the ALJ determined, after considering Plaintiff's age, education, work experience and RFC, that there "are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."  (A.R. 23.)  However, the ALJ also found that Plaintiff's ability to perform the full range of medium work is impeded by his limitations. Therefore, based on the VE's testimony, the ALJ concluded that Plaintiff could perform the requirements of hand packager, DOT[4] 920.587-018 a medium, unskilled occupation; laborer, grinding and polishing, DOT 705.687-014, a medium, unskilled occupation; and machine feeder, DOT 699.686-010, also a medium, unskilled occupation.  (A.R. 24.)

At step five, relying on the VE's testimony, the ALJ concluded, that Plaintiff is able to do other work considering his RFC, age, education and work experience, and as a result, Plaintiff has not been under a disability since April 28, 2011.  (A.R. 21.)

\\

\\

\\

\\

---

[4]      *Dictionary of Occupational Titles*, Sixth Edition Revised (U.S. Department of Labor, 1991).

4

1

2

## STANDARD OF REVIEW

3

4        Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to
5  determine whether it is free from legal error and supported by substantial evidence in the
6  record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence
7  is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a
8  reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of
9  Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the
10  evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's
11  findings if they are supported by inferences reasonably drawn from the record." *Molina v.
12  Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

13        Although this Court cannot substitute its discretion for the Commissioner's, the Court
14  nonetheless must review the record as a whole, "weighing both the evidence that supports
15  and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v.
16  Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted);
17  *Desrosiers v. Sec'y of Health & Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ
18  is responsible for determining credibility, resolving conflicts in medical testimony, and for
19  resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court
20  will uphold the Commissioner's decision when the evidence is susceptible to more than one
21  rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the
22  Court may review only the reasons stated by the ALJ in his decision "and may not affirm the
23  ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v.
24  Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's
25  decision if it is based on harmless error, which exists if the error is "'inconsequential to the
26  ultimate nondisability determination,' or if despite the legal error, 'the agency's path may
27  reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015)
28  (internal citations omitted).

5

1

2  **DISPUTED ISSUES**

3

4  Plaintiff seeks review of the ALJ's adverse decision based on the following alleged errors:

5  (1)     Whether the ALJ properly considered Plaintiff's treating physician's opinion;

6  (2)     Whether the ALJ properly considered the consultative examiner's findings; and

7  (3)     Whether the ALJ properly considered Plaintiff's testimony and made proper

8           credibility findings.

9

10  (Joint Stip. at 3.)

11

12  **DISCUSSION**

13

14  **I.     The AJL Properly Evaluated the Treating Physician's Opinion**

15

16      Plaintiff argues that the ALJ failed to give specific reasons supported by evidence in

17  the record for discounting the opinion of treating physician Dr. Phong Tran, Plaintiff's

18  worker's compensation physician.  (Joint Stip. at 3.)  Plaintiff contends that "[t]he ALJ's

19  rejection of Dr. Tran's opinion is legally flawed" because the ALJ did little more than give a

20  summary of conclusory reasons and improperly ignored Dr. Tran's opinion that Plaintiff is

21  disabled.  (*Id.* at 7-8.)

22

23      Defendant responds that the ALJ gave legally sufficient reasons for discounting Dr.

24  Tran's opinion where he explained that notwithstanding the deference usually afforded to

25  treating physicians, Dr. Tran's opinion "was contradicted by other opinions, was inconsistent

26  with the objective medical evidence, was elicited as part of an adversarial workers'

27  compensation proceeding, and was improperly based upon Plaintiff's subjective

28  complaints."  (Joint Stip.  at 10 (citing A.R. 21-22).)

6

## A. Legal Standard

A treating physician's opinions are generally entitled to "substantial weight." *Bray v Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). The ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). In particular, the ALJ must provide "clear and convincing" reasons for rejecting an uncontradicted opinion of an examining physician. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). Even when a treating physician's opinion is contradicted by evidence in the record, in order to disregard the treating physician's opinion, the ALJ must present "specific and legitimate reasons" supported by substantial evidence in the record. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The ALJ need not accept a treating physician's opinion if it is "brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *See Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004). "Items in the record that may not support the physician's opinions include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes and the claimant's daily activities." *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir.2005).

## B. The ALJ Properly Considered Dr. Tran's Opinion

Dr. Tran provided a statement dated September 11, 2014 in which he opined that Plaintiff could lift and carry less than 10 pounds on an occasional basis and on a frequent basis: stand and walk (with normal breaks) less than two hours in an 8-hour day; and sit (with normal breaks) about 4 hours in an 8-hour day. (A.R. 472.) Dr. Tran's report states that Plaintiff can sit 45 minutes before changing position and can stand 30 minutes before changing position. (*Id.*) The opinion also concludes that Plaintiff must walk around every

15 minutes for 15 minutes each time; will need to be able to shift from sitting or standing/walking at will; and needs to lie down every 2-3 hours during a work shift.  (*Id.* at 473.)  Dr. Tran found that Plaintiff has "tenderness and limited ranges of motion in cervical spine, lumbar spine, both shoulders, both knees" with "positive MRI findings."  (*Id.*)  He noted that Plaintiff "has moderate symptoms in these areas."  (*Id.*)  At the same time, Dr. Tran found that Plaintiff's overhead reaching, gross manipulation and pushing/pulling abilities were not affected by his impairments.  (*Id.*)  Dr. Tran also opined that Plaintiff should avoid even moderate exposure to extreme cold, extreme heat, wetness and humidity, avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc., and avoid all exposure to hazards, including "machinery, heights, etc."  (A.R. 474.)  Finally, Dr. Tran concluded that Plaintiff's impairments would cause him to be absent from work more than three times a month.  (*Id.*)[5]

The ALJ gave little weight to Dr. Tran's September 11, 2014 statement.  (A.R. 22.)  Despite Plaintiff's arguments to the contrary, the ALJ provided specific and legitimate reasons supported by the record evidence for doing so.  The ALJ explained that Dr. Tran's opinion was contradicted by other opinions, was inconsistent with Plaintiff's admitted activities of daily living, and relied heavily on Plaintiff's subjective statements about his symptoms that Dr. Tran "seemed to uncritically accept as true."  (A.R. 22.)

First, the ALJ rejected Dr. Tran's disability statements that indicated Plaintiff was temporarily totally disabled because these statements did not provide any specific limitations and were not supported by the objective medical evidence.  (A.R. 22.)  Moreover, the ALJ noted that Dr. Tran's opinion as to Plaintiff's ultimate disability status is an issue reserved exclusively to the Commissioner.  (*Id.*)  The ALJ did not err in discrediting Dr. Tran's

---

[5]      In addition to the September 2014 statement, Dr. Tran provided regular Primary Treating Physician's Progress Reports between March 2013 and July 2014 in connection with Plaintiff's worker's compensation case.  (A.R. 475-539.)

opinion on the ultimate issue of disability.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (treating physician's opinion is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability) (internal citation omitted).  The ALJ also noted that the term "temporarily totally disabled" is a term of art used in the worker's compensation context and has no controlling weight under Social Security agency regulations.  (A.R. 22.)  Indeed, Ninth Circuit has emphasized that while "a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability."  *Ukolov v. Barnhart*, 420 F.3d 1001, 1004 (9th Cir. 2005.)

Second, the ALJ explained that Dr. Tran's opinion is contradicted by the opinions of state agency physicians.  (A.R. 22.)  In particular, following a November 2012 consultative examination, Dr. Lizarraras concluded that Plaintiff's exertional limitations included the ability to occasionally lift and/or carry 50 pounds; to frequently lift and/or carry 25 pounds; to stand and/or walk 6 hours in an 8-hour workday; and sit for a total of about 6 hours in an 8-hour workday.  (A.R. 54-55.)  These findings are inconsistent with Dr. Tran's opinion of extreme physical limitations.  Further, a consultative psychological examination in July 2013 stated "[Plaintiff] alleging worsening on physical condition, current PE does not support allegations, sleep apnea seems to improve with CPAP."  (A.R. 74.)  In addition, the Palo Alto Medical Group noted that Plaintiff as "not taking any medications," and Plaintiff was "often moderately pressured while telling his stories," with his memory "mildly impaired," but his concentration and attention span intact.  (A.R. 75.)

A consultative psychological examiner opined that Plaintiff had some understanding and memory limitations, but his ability "to remember locations and work-like procedures" and "detailed instructions" were only moderately limited.  (A.R. 79.)  In August 2013, Dr. Kim Morris, PsyD., provided a mental residual function capacity assessment which found no significant limitations in Plaintiff's ability to understand and remember "very short and

simple instructions," but marked limitations in his ability to "carry out detailed instructions." (*Id.*)  She found Plaintiff not significantly limited in his ability to "sustain an ordinary routine without special supervision," to "work in coordination with or in proximity to others without being distracted by them," and his ability "to make simple work-related decisions." (*Id.* at 80.)  The ALJ cited these findings in giving "great weight" to the State agency medical consultants and concluded that the limitations assessed in the RFC determination to be "consistent with the findings from the consultative psychological examination."  (*See* A.R. 22.)

Third, the ALJ noted that the objective medical evidence did not support Dr. Tran's opinion.  (A.R. 20.)  The ALJ specifically noted that X-rays of Plaintiff's knees dated July 25, 2011 were normal (*see* A.R. 362), an MRI of his left elbow in October 2011 was normal (*see* A.R. 335), and physical examinations in September and October 2012 were also normal (A.R. 314, 317).  The ALJ also explained that results of nerve conduction tests done in September 2012 on Plaintiff's upper and extremities were normal.  (*See* A.R. 20 (citing A.R. 402-11).)

Finally, the ALJ noted that in October 2012, Plaintiff completed an Adult Function Report in which he stated that as part of his daily activities he watered the lawn, could walk one mile, feeds and cleans up after his dogs, could "work 2-3 hours before [needing] to rest," rakes the yard and washes the car, and he could do each of these things "2-3 hours, 3 times a week."  (A.R. 223-24.)  In addition, Plaintiff shops for food and clothing "2-3 times a month with each session taking 2 hours."  (A.R. 225.)  Although Plaintiff also described frequently falling asleep and needing reminders form his family to complete tasks, he described "walking to the mall" as one of his hobbies or interests.  (A.R. 226.)  Taken together, Plaintiff's description of his capability to perform daily activities is not consistent with Dr. Tran's opinion in his September 2014 statement that Plaintiff is capable of less than sedentary work. (*See* A.R. 472-74.)

10

1    Plaintiff notes that the 2012 Adult Function Report was two years old by the time of

2    the hearing in 2014 and Plaintiff's symptoms might have worsened in the interim.  (Joint

3    Stip. at 9.)  But as Defendant points out, it is Plaintiff's burden prove disability.  *See* 20

4    C.F.R. §§ 404.1512, 416.912; *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th

5    Cir. 2009) (internal citation omitted).  Here, Plaintiff was represented by counsel at the

6    hearing, but his counsel asked no questions about whether Plaintiff's condition had worsened

7    in the intervening period, offered no additional medical evidence into the record, and did not

8    request to leave the record open in order to receive any additional medical evidence.  (*See*

9    A.R. 31-48.)

10

11    Plaintiff further argues that, pursuant to SSR 96-5p, the ALJ had an obligation to

12    recontact Dr. Tran for clarification to ascertain the reasons for the doctor's opinion.  (Joint

13    Stip. at 9.)   However, there is no indication that the ALJ needed "clarification" as to the

14    reasons for Dr. Tran's opinion.  Dr. Tran rendered his opinion as part of Plaintiff's workers

15    compensation claim and provided regular assessment reports on Plaintiff's condition

16    between 2013 and 2012.  (*See* A.R. 475-539.)  Contrary to Plaintiff's contentions, the ALJ

17    provided specific and legitimate reasons well-supported by record evidence for rejecting Dr.

18    Tran's opinion.  *See Lester*, 81 F.3d at 830 (when treating physician's opinion is

19    contradicted by another doctor, the Commissioner must not reject the opinion without

20    providing specific and legitimate reasons supported by substantial evidence) (internal

21    citation omitted).  Accordingly, this Court finds no legal error in the ALJ's discounting of

22    Dr. Tran's opinion.

23    \\

24    \\

25    \\

26    \\

27    \\

28    \\

11

## II.    The ALJ's Evaluation of the Examining Psychologist's Opinion

### A.  Dr. Larson's Opinion

In the second disputed issue, Plaintiff challenges the ALJ's evaluation of the opinion of the examining clinical psychologist, Douglass W. Larson, PhD.  (Joint Stip. at 16.)  In July 2013, Dr. Larson conducted a comprehensive psychological assessment of Plaintiff in which he concluded that Plaintiff presented with "some mild cognitive problems secondary to depression related to physical problems." (A.R. 328.)  Dr. Larson diagnosed Plaintiff with a cognitive disorder not otherwise specified and a mood disorder.  (A.R. 332.) Dr. Larson's notes indicate that Plaintiff had never been hospitalized for emotional problems and was not currently on any psychotropic medication.  (A.R. 329.)  He found Plaintiff's memory "mildly impaired," his concentration and attention span "generally intact" and Plaintiff's insight and judgment "mildly impaired."  (A.R. 330.)  Dr. Larson noted that Plaintiff "had difficulty staying on task and was often quite digressive."  (*Id*.)  Because Plaintiff was able to drive, Dr. Larson opined that "marked limitations were not indicated at this time."  (A.R. 332.)   Based on his examination, Dr. Larson's Functional Assessment concluded that Plaintiff was mildly impaired in his "ability to understand, remember, and complete simple commands," and moderately impaired in:  (1) the "ability to understand, remember and complete complex commands;" (2) his "ability to interact appropriately with supervisors, co-workers or the public;" (3) his ability to "comply with job rules;" (4) the "ability to respond to change in the normal workplace setting;" and (5)  the "ability to maintain persistence and pace in  a normal workplace setting."  (*Id*.)  Dr. Larson noted that Plaintiff has "not sought mental health treatment for his problems."  (A.R. 330.)

\\

\\

\\

\\

12

**B. Reviewing Psychologist's Opinion**

Dr. Larson was not the only psychologist to assess Plaintiff's mental limitations.  On August 30, 2013, State agency psychologist, Kim Morris, PsyD, reviewed Plaintiff's medical records and issued a similar mental residual functional capacity assessment.  (A.R. 79-81.) Specifically, Dr. Morris opined that Plaintiff is markedly limited in his ability to carry out detailed instructions and moderately limited in his ability to:  remember locations and work-like procedures; understand and remember detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance; be punctual within customary tolerances; complete a normal workday and workweek without interruptions; perform at a consistent pace without an unreasonable number and length of rest periods; interact with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers; maintain socially appropriate behavior; and respond appropriately to changes in the work setting.  (A.R. 79-80.)

**C. ALJ's Decision**

In determining Plaintiff's mental RFC, the ALJ gave "great weight" to the Dr. Morris' opinion on the grounds that "the limitations assessed were consistent with the findings from the consultative psychological examination [by Dr. Larson].  [Plaintiff] was circumstantial with pressured speech.  His memory was mildly impaired.  However, he was able to interact with the examiner, follow directions, and was neatly groomed."  (A.R. 22.)  The ALJ also assigned "great weight" to "the findings of [Dr. Larson]" but "little weight [to] his opinion." (A.R. 22.)   The ALJ stated that the mental limitations Dr. Larson assessed were "too restrictive considering the admitted daily activities of [Plaintiff]" because Plaintiff "admitted he was able to pay bills, go out alone, spend time with family, and drive." (*Id*.)

13

Ultimately, the ALJ determined that Plaintiff retained the functional capacity to perform medium work with the following mental limitations:

> [Plaintiff] is precluded from even moderate exposure to hazards, such as machinery and heights.  Additionally, [Plaintiff] is limited to understanding, remembering, and carrying out simple job instructions, but would be unable to perform work that would require directing others, abstract thought, or planning. [Plaintiff] can maintain attention and concentration to perform simple routine, and repetitive tasks in a work environment free of fast-paced production requirements; and have occasional interaction with the public.

(A.R. 18.)

### D.  Applicable Law

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).  In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another.  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).  When the opinion being rejected belongs to a treating or examining physician and is not contradicted by another medical opinion, the ALJ is required to articulate "clear and convincing" reasons supported by substantial evidence in the record for discounting it. *Hill v. Astrue*, 698 F.3d 1153, 1159-60 (9th Cir. 2012).  When a treating or examining physician's opinion is contradicted by another medical opinion, the ALJ is required to articulate "specific and legitimate" reasons supported by substantial evidence for discounting it.  *Garrison*, 759 F.3d at 1012; *Hill*, 698 F.3d 1159-60.  Thus, an ALJ may accord greater weight to the opinion of a nonexamining State agency physician than to the contradictory opinion of a treating or examining physician so long as he articulates "specific and

14

legitimate" reasons for doing so and those reasons are supported by substantial evidence in the record.  *See Garrison*, 759 F.3d at 1012; *see also Morgan v. Comm'r of. Soc. Sec. Admin.*, 169 F.3d 595, 600-03 (9th Cir. 1999).  An ALJ errs when he discounts an examining physician's medical opinion, or a portion thereof, "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion."  *See Garrison*, 759 F.3d at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

### E.  Discussion

Plaintiff argues that the ALJ erred by "implicitly rejecting" Dr. Larson's conclusions that Plaintiff is moderately limited in his ability to:  interact appropriately with supervisors, coworkers or the public; comply with job rules such as safety and attendance; respond to change in a normal workplace setting; and maintain concentration persistence and pace in a normal workplace setting.  (Joint Stip. at 18; *see also* A.R. 332.)  Defendant responds that the ALJ reasonably evaluated Dr. Larson's opinions of mild or moderate findings overall and translated and incorporated the portion of Dr. Larson's opinion that was supported by the record into Plaintiff's RFC.  (Joint Stip. at 19.)  Defendant is correct.

Dr. Larson's opinion is virtually identical to Dr. Morris' opinion.  They both assessed moderate limitations in Plaintiff's ability to:   (1) understand, remember and complete complex commands (*see* A.R. 79 (Morris), 332 (Larson)); (2) interact appropriately with supervisors, co-workers or the public (*see* A.R. 80 (Morris), 332 (Larson)); (3) comply with job rules (*see* A.R. 79, 80 (Morris), 332 (Larson)); (4) respond to change in the normal workplace setting (*See* A.R. 80 (Morris), 332 (Larson)); and (5) maintain persistence and pace in  a normal workplace setting (*see* A.R. 80 (Morris), 332 (Larson)).  Accordingly, Plaintiff has not established that the opinions of the examining and reviewing physician are

15

inconsistent and the ALJ rejected some portion of Dr. Larson's opinion in favor of Dr. Morris' opinion.

Instead, the primary difference between the two opinions is that Dr. Morris went one step farther than Dr. Larson.  She, unlike Dr. Larson, considered whether Plaintiff, despite his moderate mental limitations, would be able to understand and remember simple instructions, complete a full workday and workweek, maintain appropriate behavior, and respond appropriately to supervisors.  (*Compare* A.R. 81 (Morris) *with* A.R. 332 (Larson)). Dr. Morris found that Plaintiff retained these capacities.

The fact that Dr. Larson did not consider whether and to what extent Plaintiff retained the ability to understand and remember simple instructions, complete a full workday and workweek, maintain appropriate behavior, and respond appropriately to supervisors does not render Dr. Larson's opinion inconsistent with the opinion of Dr. Morris.  Instead, the Ninth Circuit's decision in *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008) is controlling.  In *Stubbs-Danielson*, the Ninth Circuit found that the ALJ did not err when he seemingly ignored a treating physician's opinion that the plaintiff was "moderately limited in her ability to perform at a consistent pace" because the ALJ credited the opinion of a reviewing physician who had assessed the same limitation but who, unlike the treating physician, had considered whether the plaintiff could carry out simple tasks despite this deficit – and concluded that she could.  *See Stubbs-Danielson*, 539 F.3d at 1171-1175.  The Ninth Circuit explained:  "[The treating physician] did not assess whether [the plaintiff] could perform unskilled work on a sustained basis.  [The reviewing physician's] report did. [The reviewing physician's] report, which also identified 'a slow pace, both in thinking & actions' and several moderate limitations in other mental areas, ultimately concluded [the plaintiff] retained the ability to 'carry out simple tasks.'"  *Stubbs-Danielson*, 539 F.3d at 1173.  Thus, the Ninth Circuit held that the ALJ's exclusion of the treating physician's opinion from the RFC assessment did not "constitute a rejection of [the treating physician's]

16

opinion" because the two opinions were consistent with each other and the ALJ "explain[ed] the omission of [the treating physician's opinion] . . . by reference to [the reviewing physician's] assessment. *Id* at 1174, 1175.

As in *Stubbs-Danielson*, Dr. Morris' and Dr. Larson's opinions are not in conflict – Dr. Morris' opinion is simply more specific – and the ALJ did not err by treating the two opinions as such and adopting Dr. Morris' opinion in full. *See Stubbs-Danielson*, 539 F.3d at 1171-1175. Accordingly, the Court finds no error with the ALJ's assessment of Dr. Larson's opinion.

## III.   The ALJ Did Not Err in Discounting Plaintiff's Credibility

Plaintiff's third argument, that the ALJ improperly evaluated Plaintiff's credibility, also lacks merit. The ALJ found Plaintiff's allegations concerning the intensity, persistence and limiting effects of his symptoms "less than fully credible." (A.R. 19.) An ALJ must make two findings before determining that a claimant's pain or symptom testimony is not credible. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015); *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (court must determine "whether the ALJ's adverse credibility finding . . . is supported by substantial evidence under the clear and convincing standard"). The ALJ must "specifically identify the testimony [from the claimant that] she or he finds not to be credible

and . . . explain what evidence undermines the testimony." *Treichler*, 775 F.3d at 1102 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)). "General findings are insufficient." *Brown-Hunter*, 798 F.3d at 755 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

Here, the ALJ's reasons for discrediting Plaintiff's subjective testimony included that Plaintiff's own statements in his Adult Function Report about his work around the house contradicted his testimony that he did very little. The ALJ explained:

> In the Adult Function Report, the [Plaintiff] admitted he was able to care for pets (including feeding and cleaning up after them), do yard work a couple times a week, wash the car, and walk one mile. He acknowledges he was able to go out alone and shop in the stores. The physical and mental abilities required to perform these activities are those necessary for obtaining and maintaining employment. Furthermore, the treatment the [Plaintiff] received was fairly conservative. Although surgery was discussed, no surgery was scheduled. The [Plaintiff] received injections, medications and acupuncture. He was also scheduled for physical therapy.

(A.R. 19.) Plaintiff's activities of daily living and his conservative treatment regimen are specific, clear, and convincing reasons supported by substantial evidence in the record for discounting Plaintiff's subjective symptom testimony.

\\
\\
\\
\\
\\
\\

18

**CONCLUSION**

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: February 24, 2017

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE